Laurence Feingold City Attorney City of Miami Beach
QUESTION:
Does s. 768.28(14), F.S., exempt the risk management program meetings between the city attorney, city's risk manager, and city commission from the Government in the Sunshine Law and the documents produced during those meetings from the Public Records Law?
SUMMARY:
To the extent that meetings between the city attorney, the city's risk manager, and the city commission are proceedings under the city's risk management program for tort liability and relate solely to the evaluation of a claim filed with the program or an offer of compromise of such a claim, such proceedings are exempt from s. 286.011, F.S., and the minutes of such proceedings as well as the claims files maintained under such program are exempt from disclosure until the termination of the litigation and settlement of claims arising out of the same incident.
Section 286.011, F.S., the Government in the Sunshine Law provides:
 All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
The Supreme Court of Florida has held that discussions between a city council and the city attorney to discuss the settlement of pending litigation to be subject to the Sunshine Law.[1]
Similarly, the Supreme Court has stated that there is no attorney-client exemption from the Public Records Law, Ch. 119, F.S., which requires the disclosure of records made or received by a public agency in connection with the transaction of its official business.[2] In the absence of a statutory exemption, therefore, discussions between the city attorney and the city commission are subject to s. 286.011, F.S., and any records generated from such meetings, absent such an exemption, are subject to the disclosure provisions of Ch. 119, F.S.
Section 768.28(14), F.S., authorizes the state and its agencies and subdivisions to be self-insured, to enter into risk management programs, or to purchase liability insurance, or any combination thereof, in anticipation of any claim, judgment, or claims bill which they may be liable to pay pursuant to s. 786.28, F.S.[3]
In 1989, the Florida Legislature enacted Ch. 89-360, Laws of Florida, entitled an "act relating to insurance and the State Fire Marshall." Section 92 of the act, which was added to the bill on the floor of the Florida House of Representatives,[4]
amends s. 768.28(14) to include paragraphs (b), (c) and (d), which provide:
(b) The claims files maintained by any risk management program administered by the state, its agencies, and its subdivisions and discussions pertinent to the evaluation of such claims files shall be considered privileged and confidential and shall be only for use by the administration of such risk management program in fulfilling its duties and responsibilities. Such claims files are exempt from the provisions of s. 119.07(1). This exemption is subject to the Open Government Sunset Review Act in accordance with s. 119.14.
(c) The proceedings, and the minutes thereof, of any risk management program administered by the state, its agencies, or its subdivisions, which relate solely to the evaluation of claims filed with such a risk management program or which relate solely to offers of compromise of claims filed with such a risk management program, shall not be subject to inspection under the provisions of s. 119.07(1); nor shall such proceedings be open to the public under the provisions of s. 286.011. These exemptions are subject to the Open Government Sunset Review Act in accordance with s. 119.14.
(d) The claims files and minutes of proceedings shall only be exempt from s. 119.07(1) until termination of all litigation and settlement of all claims arising out of the same incident.
Section 768.28(2), F.S., defines "state agencies or subdivisions" to include, among others, "counties, or municipalities."
It is a rule of statutory construction that all parts of a statute are to be read together.[5] In addition, exemptions from the Sunshine Law and the Public Records Law are to be strictly construed.[6] Section 768.28, F.S., waives the state's immunity from tort liability to the extent provided therein. As subsection (1) of the statute provides:
In accordance with s. 13, Art. X, State Constitution,[7]
the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. . . . (e.s.)
Subsection (14) of s. 768.28, F.S., authorizes the state and its agencies and subdivisions to enter into risk management programs in anticipation of any claim, judgment or claims bill which they may be liable to pay under this statute, i.e., for tort claims against the governmental entity. Therefore, while s. 768.28(14), F.S., provides an exemption from Ch. 119 and s. 286.011, F.S., such exemption is not unlimited. Reading the statute as a whole, the exemption contained in subsection (14) appears to apply to the city's risk management program for tort liability only.
Moreover, the exemption provided in s. 768.28(14), F.S., appears to contemplate the existence of a claim having been filed prior to the exemption becoming effective. Section 768.28(14)(c), F.S., exempts the proceedings and minutes thereof of a risk management program which relate solely to the evaluation of claimsfiled with the program or offers of compromise of claimsfiled with the program. Subparagraph (14)(b) of the statute refers to claims files. Accordingly, the exemption would not appear applicable to meetings held prior to the filing of a tort claim with the risk management program.
Therefore, I am of the opinion that to the extent that meetings between the city attorney, the city's risk manager, and the city commission are proceedings under the city's risk management program for tort liability which relate solely to the evaluation of a claim filed with the program or an offer of compromise of such a claim, such proceedings are exempt from s. 286.011, F.S., and the minutes of such proceedings as well as the claims files maintained under such program are exempt from disclosure until the termination of the litigation and settlement of claims arising out of the same incident.
RAB/tjw
[1] See, Neu v. Miami Herald Publishing Company,462 So.2d 821 (Fla. 1985) (s. 90.502, F.S., which provides for the confidentiality of attorney-client communications under the Florida Evidence Code, does not create an exemption for attorney-client communications for the Sunshine Law). And see, City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971); AGO 73-56.
[2] See, City of North Miami v. Miami Herald Publishing Company, 468 So.2d 218 (Fla. 1985) (s. 90.502, F.S., which establishes an attorney-client privilege for public and private entities, does not remove communications between an agency and its attorney from the open inspection requirements of Ch. 119, F.S.); Wait v. Florida Power and Light Company, 372 So.2d 420
(Fla. 1979) (only the Legislature and not the judiciary can exempt attorney-client communications from Ch. 119). And see, s.119.07(1)(a), F.S., requiring the custodian of public records to permit the record to be inspected at reasonable times, under reasonable conditions, and under the supervision of the custodian or his designee; and s. 119.011(1) and (2), F.S., respectively defining "Public records" and "Agency."
[3] Section 768.28(14)(a), F.S.
[4] See, Journal of the House of Representatives, CS/SB 845, pp. 1349-1379, June 2, 1989. Inasmuch as the language of s. 768.28(14)(b), (c) and (d), F.S., were added to the bill on the floor of the House of Representatives, an examination of the legislative history records surrounding the enactment of CS/SB 845 revealed no evidence of the legislative intent in adopting such language.
[5] See, State v. Webb, 398 So.2d 820 (Fla. 1981) (to determine legislative intent, court must consider act as a whole); State v. Rodriquez, 365 So.2d 157 (Fla. 1978) (entire statute must be considered in determining legislative intent); City of St. Petersburg v. Earle, 109 So.2d 388 (2 D.C.A. Fla., 1959) (language in any legislation is to be construed with the particular act of which it is a part).
[6] See, Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969) (as a statute enacted for the public benefit, s. 286.011, F.S., should be liberally construed to give effect to its public purpose while exemptions should be narrowly construed); Seminole County v. Wood, 512 So.2d 1000 (5 D.C.A. Fla., 1987), petition for review denied, 520 So.2d 586
(Fla. 1988) (Public Records Law is to be liberally construed in favor of open government and exemptions from disclosure are to be narrowly construed so they are limited to their stated purpose).
[7] Section 13, Art. X, State Const., states that the Legislature may provide by general law for bringing suit against the state.