493 So.2d 480 (1986)
The TRIBUNE COMPANY, Mary Jo Melone, Times Publishing Company, and William Riley Jent, Appellants,
v.
In re PUBLIC RECORDS, P.C.S.O. # 79-35504 MILLER/JENT, Appellee.
No. 85-1776.
District Court of Appeal of Florida, Second District.
July 9, 1986.
Rehearing Denied September 5, 1986.
*481 Gregg D. Thomas, Steven L. Brannock and Laura Whiteside of Holland & Knight, Tampa, for appellant Tribune Co.
George K. Rahdert and M. David Shapiro of Rahdert, Anderson and Richardson, St. Petersburg, for appellants, Times Publishing Co. and Mary Jo Melone.
Eleanor Jackson Piel, New York, for appellant William Riley Jent.
James T. Russell, State Atty. and C. Marie King and Phil Van Allen, Asst. State Attys., Clearwater, and Norman Palumbo, New Port Richey, Legal Counsel, for Sheriff of Pasco County.
RYDER, Judge.
We reverse an order of the Pasco County Circuit Court denying appellants access to certain public records in the custody of the Pasco County Sheriff.
Ernest Lee Miller and William Riley Jent were convicted of murder and sentenced to death in 1979, and their convictions were affirmed by the Florida Supreme Court. Miller v. State, 415 So.2d 1262 (Fla. 1982); Jent v. State, 408 So.2d 1024 (Fla. 1981). Later, Miller and Jent sought post-conviction relief in both state and federal forums, two types of which were in progress in July, 1985, when the instant case was *482 heard by the court below, i.e., appeals to the U.S. Court of Appeals for the Eleventh Circuit of a denial of a writ of habeas corpus, and petitions to the Florida Supreme Court for a writ of error coram nobis which were later denied.
Because of great public interest in the cases, including questions about the identity of the victim, several parties (including Miller and Jent who believed the requested information might exonerate them) sought access via the Public Records Act to the Miller and Jent case files held by the Pasco County Sheriff. The information was also sought by The Tribune Company, publishers of the Tampa Tribune, Mary Jo Melone, a reporter for the St. Petersburg Times, her publisher, the Times Publishing Company, and a brother and sister of a missing Tennessee woman who may have been the murder victim. The information sought included: (1) investigative reports pertaining to the disappearance of the Tennessee woman; (2) police reports of the crime scene investigation; (3) transmittal sheets of evidence to a crime lab; (4) crime lab reports; (5) arrest reports; (6) information regarding other suspects; (7) statements of co-defendants and witnesses; (8) arrest records of particular witnesses; (9) a report of an autopsy of the victim with fingerprints and dental charts; (10) and a composite sketch of the victim.
In a quandary about the several requests for public disclosure, the Pasco County Sheriff, custodian of the records, filed an action for declaratory judgment in Pasco County Circuit Court asking whether the records sought were exempt from disclosure to the public as active criminal investigative information pursuant to section 119.07(3)(d), Florida Statutes (1985), and whether Miller's and Jent's actions for post-conviction relief were appeals within the meaning of section 119.011(3)(d)2, Florida Statutes (1985). The appellants, and others, were granted leave to intervene in the action before the circuit court.
The declaratory judgment action was heard by Judge Wayne L. Cobb who had presided over the trials of Miller and Jent. The sheriff, as custodian of the records, and the state attorney for Pasco County asserted that the requested records were exempt from disclosure as active criminal investigative information since the statute defined "active," among other things, as being "directly related to pending prosecutions or appeals." § 119.011(3)(d)2, Fla. Stat. (1985). In short, the sheriff and the state attorney argued that the actions for post-conviction relief brought by Miller and Jent were equivalent to appeals under the Public Records Act, thus the files sought were exempt from disclosure so long as these actions were in progress.
The circuit court denied a request for in camera inspection of the files and held, for purposes of section 119.011(3)(d)2, Florida Statutes (1985), the Florida "legislature intended that use of the word `appeal' ... be generic rather than technical, and if not synonymous with `review,' then certainly synonymous with `normal judicial review.'" Thus, Miller's and Jent's pending habeas corpus appeals in federal court and petitions for writ of error coram nobis to the Florida Supreme Court were "appeals" sufficient to continue the active status of their criminal investigative files thereby making the files exempt from public disclosure. The sheriff, said the circuit court, was obliged to disclose only those records which were part of an open court file, and such records did not necessarily include all materials made available to Miller and Jent by rules of discovery. The Tribune Company, the Times Publishing Company, its reporter, Melone, and Jent appealed.
The principal focus of our consideration is whether actions for post-conviction relief, that is, actions brought after convictions have been affirmed on direct appeal, are pending appeals within the meaning of section 119.011(3)(d)2 of the Florida Statutes, thereby making the requested records or files active criminal investigative information and thus exempt from public disclosure under the Public Records Act. We think not and reverse the holding of the lower court.
*483 The basic premise of the Public Records Act is that all state, county and municipal records in Florida are open to public inspection and examination unless specifically exempted by statute. §§ 119.01(1) and 119.07(a) through (u), Fla. Stat. (1985). A public record is "any material prepared in connection with official agency business which is intended to perpetuate, communicate or formalize knowledge of some type." Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633, 640 (Fla. 1980). The Public Records Act is to be liberally construed in favor of "open government to the extent possible in order to preserve our basic freedom, without undermining significant governmental functions such as crime detection and prosecution... ." Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775, 779 (Fla. 4th DCA 1985). Exemptions from disclosure are to be construed narrowly and limited to their stated purposes. Miami Herald Publishing Co. v. City of North Miami, 452 So.2d 572, 573 (Fla. 3d DCA 1984); Cf. State v. Nourse, 340 So.2d 966, 969 (Fla. 3d DCA 1976) ("unless the right to the exception is clearly apparent in the statute, no benefits thereunder will be permitted"). "[W]hen in doubt the courts should find in favor of disclosure rather than secrecy." Bludworth at 780, n. 1.
The criminal investigative information exemption of the Public Records Act and its predecessor, the common law police secrets rule, have "always had a limited purpose  to prevent premature disclosure of information when such disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection." Tribune Co. v. Cannella, 438 So.2d 516, 523 (Fla. 2d DCA 1983), rev'd on other grounds, 458 So.2d 1075 (Fla. 1984), appeal dismissed, ___ U.S. ___, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985).
The circuit court's definition of "appeal" as "generic rather than technical" and "synonymous with `normal judicial review,'" thus including such post-conviction actions as petitions for habeas corpus, habeas corpus appeals, and petitions for writ of error coram nobis, is much too broad an interpretation. The word "appeals" in the statute does not connote the loose popular sense of the term. Cf. Davis v. Strople, 39 So.2d 468, 471 (Fla. 1949) (concurring opinion). Such legal terms in a statute are "to receive their technical meaning, unless the contrary plainly appears to have been the intention of the legislature." Williams v. Dickenson, 28 Fla. 90, 9 So. 847, 849 (Fla. 1891). If the legislature had meant to include post-conviction relief proceedings as a basis for an exemption to the Public Records Act it surely would have said so. And only the legislature can create such an exemption, not the court or custodian. Douglas v. Michel, 410 So.2d 936, 940 (Fla. 5th DCA 1982); Wait v. Florida Power & Light Co., 372 So.2d 420, 424 (Fla. 1979). "[I]n ascertaining the intent of the Legislature in this case we look to the general policy behind the Public Records Act ... an open policy with respect to state, county and municipal records." Satz v. Blankenship, 407 So.2d 396, 398 (Fla. 4th DCA 1981). The circuit court exceeded its authority by expanding the definition of appeal.
Defining "appeals" to include post-conviction relief proceedings at best makes access to public information unpredictable, and at worst, forecloses it altogether. To extend the active status of criminal investigative information so long as a post-conviction action remains possible might seal the records forever because some post-conviction actions can be brought at any time; for example, a petition for a writ of error coram nobis may be filed even twenty-eight years after a sentence is completed. See Weir v. State, 319 So.2d 80, 81 (Fla. 2d DCA 1975). On the other hand, to say such information is not active (thus disclosable) so long as no such proceedings are pending would make disclosure depend on the vagaries of chance, a result so capricious and illogical as to be absurd. The legislature cannot be deemed to have intended an absurd result where a reasonable interpretation is available. State v. Webb, 398 So.2d 820, 824 (Fla. 1981).
*484 If we follow the circuit court's reasoning, in order for Miller and Jent to acquire access to the custodian's secret information they must cease all post-conviction attacks on their convictions. Miller and Jent, however, seek the secret information for the very purpose of determining whether they were fairly treated by the criminal justice process. To require them to cease all efforts to aid themselves by attacking their convictions, in order to find out whether the secret information will help them, puts them between a real-life Scylla and Charybdis. Miller and Jent are faced with an insoluble dilemma: they cannot help themselves without the information, yet they must not help themselves in order to obtain it.
On the other hand, to restrict the public's access to the information depending upon whether (or when) Miller and Jent (or others on their behalf, now or even after they are executed, if executed they will be) seek post-conviction relief borders on obfuscation. The limited purpose of the exemption for active criminal investigative information  to protect the apprehension and prosecution of persons accused of crime  has been fully satisfied in this case. Cannella, 438 So.2d at 523. Miller and Jent were long ago arrested, investigated, indicted, tried and convicted. To lockstep the public's right to know depending on what Miller and Jent have done or might do simply goes beyond the bounds of reason. Once public records are open for inspection they cannot be withdrawn by subsequent court challenge. Cannella, 458 So.2d at 1079.
The public policy pervading this case is that public records must be freely accessible unless some overriding public purpose can only be secured by secrecy. Lorei v. Smith, 464 So.2d 1330, 1332 (Fla. 2d DCA 1985). This public policy favoring open records must be given the broadest expression. Id. It is the exception which must be narrowly construed. Bludworth, 476 So.2d at 780, n. 1. The action of the circuit court has reversed these principles by limiting access to the secret information via a broad interpretation of the exception. This does not comport with legislative intent and cannot prevail. Simply put, the term "pending appeals" as used in section 119.011(3)(d)2 of the Florida Statutes, does not include post-conviction proceedings such as petitions for habeas corpus or appeals thereof, petitions for writ of error coram nobis, petitions for certiorari, motions pursuant to Florida Rule of Criminal Procedure 3.850, or any other proceeding other than the first appeal of right.
In view of our holding, it may not have been an abuse of discretion for the circuit court not to conduct an in camera inspection in this case. See § 119.07(2)(b), and (3)(d), Fla. Stat. (1985) (an in camera inspection is discretionary for a (3)(d) exemption). It is always better practice, however, to conduct such an inspection in cases where an exemption to the Public Records Act is asserted. An inspection lends credence to the decision of the trial court to release or not, and provides a much better basis for appellate review. State ex rel. Times Pub. Co. v. Patterson, 451 So.2d 888, 891 (Fla. 2d DCA 1984); Donner v. Edelstein, 423 So.2d 367, 368 (Fla. 3d DCA 1982). An in camera inspection also helps dispel any cloud of public suspicion that might otherwise be suspended over governmental efforts to sustain secrecy sua sponte. See Lorei, 464 So.2d at 1331-32.
In consonance with the principle of free access to public records it is not the purpose of an in camera inspection for the court to decide whether there are sufficient reasons to release requested information, but rather to decide whether there are sufficient reasons not to release it. Cf. Lorei v. Smith, 464 So.2d at 1332. ("When the demand for disclosure competes with a public interest, asserted to be protected by a statutory exemption, the judiciary's role is to insure that the governmental claim does not defeat the right to disclosure.") Unless the custodian of the requested records asserts and sustains a specific exemption to disclosure, the information must be made available to the public. Tribune Co. v. Cannella, 458 So.2d at 1078-79.
*485 The circuit court also construed section 119.07(4), Florida Statutes, "to require disclosure of otherwise exempt records only if made part of an open court file, not simply provided as a part of discovery." This implies that material provided to defendants under the rules of discovery can only be released to the public if the material is a part of an open court file. Clearly, this conflicts with the express provisions of the Public Records Act. Ch. 119, Fla. Stat. (1985); Satz v. Blankenship, 407 So.2d at 398.
All "[d]ocuments given or required by law or agency rule to be given to the person arrested," except information which reveals the identity of a victim of sexual battery or child abuse, are disclosable to the public. §§ 119.011(3)(c)5, and 119.07(3)(h), Fla. Stat. (1985). The "person arrested" includes a defendant charged with a crime. Bludworth, 476 So.2d at 779. Thus, all information given or required to be given to defendants is disclosable to the public when released to the defendants or their counsel. Id.; Satz v. Blankenship, 407 So.2d at 398. In other words, whatever information is discoverable becomes a public record when released to arrested persons, defendants or their counsel.
Reversed and remanded to the circuit court with instructions to order the Sheriff of Pasco County to release the Miller and Jent files to appellants save the material, if any which is cloaked by a specific exemption under the Act.
DANAHY, C.J., and SANDERLIN, J., concur.